UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
TIMOTHY MILLS,

                      Plaintiff,

    -v-

THE CITY OF NEW YORK, NYPD Detective RAFAEL MUNOZ, NYPD Officer JULIAN FEBRES, NYPD Officer JAMES DACO, NYPD Officer GILBERTO ORTIZ, NYPD Sergeant EUGENE BURKE, NYCDOC Officers RICHARD ROE 1 through RICHARD ROE 5 (the name "Richard Roe" being fictitious as the true names and ranks are currently unknown), in their individual capacities,

                      Defendants.
----------------------------------------------------------------x

**SECOND AMENDED COMPLAINT AND DEMAND FOR A JURY TRIAL**

INDEX NO. 13-CV-5939 (DC)

Plaintiff TIMOTHY MILLS, through his attorney ROBERT M. QUACKENBUSH of Rankin & Taylor, PLLC, as and for his second amended complaint, does hereby state and allege:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with a pendant claim of negligence arising under New York law.

2. Plaintiff TIMOTHY MILLS' rights were violated when officers of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unconstitutionally and without any legal basis seized and arrested Mr. MILLS and caused him to be prosecuted for gun possession when, in fact, it should have been obvious to any competent observer that he could not have possessed the gun at issue.

1

3. Moreover, Mr. MILLS' detention at Rikers Island was unduly prolonged due to the negligence of officials of the New York City Department of Correction ("DOC") who, despite having actual knowledge that Supreme Court Justice Neil Ross had ordered Mr. MILLS released immediately – that is, on September 10, 2012 – did not release Mr. MILLS until late in the evening of September 12 or the early morning hours of September 13, 2012.

4. By reason of defendants' actions, including their unlawful arrest, malicious prosecution and negligence, Mr. MILLS was deprived of his constitutional and common law rights.

5. Mr. MILLS also seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

6. This action is brought pursuant to 42 U.S.C. § 1983 for violations of Mr. MILLS' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

7. This Court has subject matter jurisdiction over federal claims, such as those at issue in this case, pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4).

8. On or about May 15, 2013, Justice Geoffrey D. Wright of the Supreme Court of the State of New York granted leave for Mr. MILLS to file a Notice of Claim upon the City of New York related to his negligence claim under New York law.

9. On May 22, 2013, Mr. MILLS duly filed the Notice of Claim with the New York City Comptroller.

10. Mr. MILLS subsequently appeared for a hearing pursuant to N.Y. Gen. Mun. L. § 50-h.

11. Thus, this Court has supplemental jurisdiction over the Mr. MILLS' negligence claim under New York law because it is so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

12. Mr. MILLS' claims were not adjusted by the New York City Comptroller's Office within the time period set by statute.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. MILLS' claims primarily arose in the County of New York, within the confines of this judicial district.

14. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

15. Plaintiff TIMOTHY MILLS was at all times relevant to this action a resident of the County and State of New York. He is currently a resident of the County of Kings in the State of New York.

16. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department and a corrections department which act as its agents in the areas of law enforcement and corrections, respectively, and for which it is ultimately responsible. The CITY assumes the risks incidental to the maintenance of a police force and corrections department and the employment of police and corrections officers as said risks attach to the public consumers of the services provided by NYPD and DOC.

17. Defendants NYPD Detective RAFAEL MUNOZ, NYPD Officer JULIAN FEBRES, NYPD Officer JAMES DACO, NYPD Officer GILBERTO ORTIZ, and NYPD Sergeant EUGENE BURKE (collectively referred to as the "NYPD defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD. The NYPD defendants are being sued herein in their individual capacities.

18. Defendants DOC Officers RICHARD ROE 1 through RICHARD ROE 5 (the name "Richard Roe" being fictitious as the true name and rank is currently unknown to Mr. MILLS)

(collectively referred to as the "DOC defendants") are and were at all times relevant herein, officers, employees and agents of the DOC. The DOC defendants are being sued herein in their individual capacities.

19. At all times relevant herein, the NYPD defendants and DOC defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and DOC, respectively, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD and DOC, respectively, at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and DOC and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD and DOC, respectively.

20. The true name, rank and shield number of defendants DOC Officers RICHARD ROE 1 through RICHARD ROE 5[1] are not currently known to Mr. MILLS.

21. However, the ROE defendants were employees or agents of the DOC at all times relevant herein.

22. Accordingly, the ROE defendants may be entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to N.Y. Gen. Mun. L. § 50-k.

23. The Law Department, then, is hereby put on notice (a) that Mr. MILLS intends to name the ROE defendants as defendants in an amended pleading once their true names and ranks become known and (b) that the Law Department should immediately begin preparing their respective defenses, if any, in this action.

---

[1] By identifying the unknown defendants as "Richard Roe," Mr. MILLS makes no representation as to the gender or actual rank of any of these defendants.

## STATEMENT OF FACTS

### *Facts and Circumstances of Mr. MILLS' Arrest and Initiation of Charges Against Him*

24. The arrest described herein occurred primarily in the vicinity of 1950 Third Avenue in the County of New York on September 3, 2012 at approximately 4:00 p.m. and thereafter.

25. At approximately the time and location above, Mr. MILLS was walking on the sidewalk when he saw Marlon Ridley, a person who he recognized as being recently ejected from a nearby halfway house where Mr. MILLS was staying.

26. Mr. MILLS and Mr. Ridley briefly greeted each other, and Mr. Ridley asked Mr. MILLS if he would be willing to give him some toiletries from the halfway house's supplies.

27. Seeing that Mr. Ridley had apparently fallen on hard times since being ejected from the halfway house, Mr. MILLS agreed to retrieve some of his own toiletries from the halfway house for Mr. Ridley.

28. A few minutes later, having retrieved the toiletries, Mr. MILLS walked back towards the vicinity of the above-mentioned location to meet Mr. Ridley and give him the toiletries.

29. Mr. MILLS and Mr. Ridley briefly entered the convenience store so Mr. MILLS could make some change to give to Mr. Ridley.

30. Mr. MILLS then gave Mr. Ridley some change. They left the store, and Mr. MILLS and Mr. Ridley then parted ways and began to walk away from each other.

31. However, before they left the area, the NYPD defendants rushed in and ordered both Mr. MILLS and Mr. Ridley to get on the ground – and both complied with the order.

32. Upon information and belief, one of the NYPD defendants approached a nearby phone booth, pulled out a black bag from an opening near the top of the phone booth, and recovered a loaded firearm.

33. Because Mr. MILLS had never been anywhere near the phone booth at any relevant time period, he assumed he would be released from custody in short order.

34. However, the senior NYPD defendant on the scene (upon information and belief, Sergeant BURKE) told the other NYPD defendants that both Mr. Ridley *and* Mr. MILLS should be arrested.

35. The officers took Mr. MILLS to a nearby precinct and then to Central Booking.

36. When presented to the criminal court, both Mr. MILLS and Mr. Ridley were charged with two counts of criminal possession of a weapon in the second degree, N.Y. Pen. L. §§ 265.03(1)(b) and 265.03(3).

37. The charges were apparently based upon the alleged observations of an informant who worked inside a convenience store at 1950 Third Avenue.

38. However, even if the confidential informant's allegations were true, they still did not provide probable cause – or any cause at all – to believe Mr. MILLS had any involvement whatsoever with the firearm found inside the phone booth.

39. Specifically, the felony accusatory instrument read as follows:

> Deponent [NYPD Officer FEBRES] is informed by an individual known to the District Attorney's Office that informant observed both of the above-named defendants at the store at the above-named location and browsing products at the above-named location. Deponent is further informed by informant that informant observed the two defendants walk away from informant's store together, approach a payphone booth in front of informant's store together and huddle inside of the privacy barriers of said phone booth together before walking away together. Deponent is further informed by informant that informant observed defendant Ridley return shortly thereafter and place a black bag inside of an opening in the above-described phone booth.
>
> Deponent further states that deponent observed Detective Rafael Munoz of the 23rd Precinct recover the above-described black bag from the above-described opening in the phone booth, and that said

       black bag contained one 9mm firearm. Deponent is further informed by Detective Munoz that Detective Munoz checked said firearm and observed it was loaded with ammunition.

40. The allegations attributed to the confidential informant are false in at least one respect: at no time did Mr. MILLS and Mr. Ridley "huddle inside of the privacy barriers of said phone booth together."

41. In fact, it is simply is not credible that Mr. Ridley – who weighs *at least* 240 pounds but stands only about 5'11" – could fit inside a phone booth with Mr. MILLS at the same time.[2]

42. Moreover, the NYPD radio run received by the NYPD defendants was clear that the person who placed the black plastic bag with the gun into the phone booth was a person matching Mr. Ridley's description, not Mr. MILLS' description.

   a. The radio run stated that the person who placed the suspect black plastic bag in the phone booth was six feet tall, "well built", wearing tan pants and a shirt with blue and white vertical stripes.

   b. Upon information and belief, at the time of his arrest, Mr. Ridley was wearing tan pants and a shirt with blue and white vertical stripes.

   c. According to NYPD records, at the time of his arrest, Mr. MILLS was wearing black jogging pants and white t-shirt.

43. In any event, the allegations make clear that (1) the firearm was recovered from a black bag and that (2) Marlon Ridley alone put the black bag in the phone booth.

44. Thus, even taking the informant's statements as true (which they were not, as described above), the police lacked any basis to connect Mr. MILLS with the firearm recovered from the phone booth.

---

[2] Information regarding Mr. Ridley's size was taken from pedigree information contained on the website for the New York City Department of Correction.

45. Nevertheless, the criminal court set bail at $7,500, which Mr. MILLS could not readily afford. Accordingly, Mr. MILLS was sent to Rikers Island.

### *Facts and Circumstances of the Failure to Timely Release Mr. MILLS' Pursuant to the September 10, 2012 Order of Justice Neil Ross*

46. On September 7, 2012, Mr. MILLS was brought from Rikers Island back to the criminal court. Because a grand jury had not been convened related to his arrest on September 3, 2012, Mr. MILLS was scheduled to be released on his own recognizance pursuant to N.Y. Crim. Pro. L. § 180.80.[3]

47. Prior to Mr. MILLS' court appearance on September 7, his defense counsel and the assigned prosecutor agreed that Mr. MILLS would waive time under N.Y. Crim. Pro. L. § 30.30, the state's speedy trial statute. They also agreed that Mr. MILLS' defense counsel would *not* be waiving time under N.Y. Crim. Pro. L. § 180.80, which would result in Mr. MILLS being released on his own recognizance that same day.

48. However, at the September 7 court appearance where Mr. MILLS was scheduled to be released on his own recognizance, Mr. MILLS' defense counsel and the prosecutor made ambiguous statements which unfortunately led the court to believe that Mr. MILLS was

---

[3] The statute reads as follows:

Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance unless:

  1. The failure to dispose of the felony complaint or to commence a hearing thereon during such period of confinement was due to the defendant's request, action or condition, or occurred with his consent; or
  2. Prior to the application:
   (a) The district attorney files with the court a written certification that an indictment has been voted; or
   (b) An indictment or a direction to file a prosecutor's information charging an offense based upon conduct alleged in the felony complaint was filed by a grand jury; or
  3. The court is satisfied that the people have shown good cause why such order of release should not be issued. Such good cause must consist of some compelling fact or circumstance which precluded disposition of the felony complaint within the prescribed period or rendered such action against the interest of justice.

waiving time under both N.Y. Crim. Pro. L. §§ 30.30 *and* 180.80(1). As a result of those ambiguous statements, Mr. MILLS was not released on his own recognizance on September 7. Instead, he was taken back to Rikers Island.

49. Upon information and belief, Mr. MILLS' defense counsel worked vigorously over the next hours and days to correct the misunderstanding and to ensure that Mr. MILLS was, in fact, released on his own recognizance.

50. As a apparent result of the efforts of Mr. MILLS' defense counsel, on September 10, 2012, the assigned prosecutor had Mr. MILLS' case recalled and explained to the court that he, in fact, should have been released on his own recognizance on September 7, 2012 because his counsel had not actually intended to waive time under N.Y. Crim. Pro. L. § 180.80(1).

51. At the end of the court appearance, Justice Neil Ross unambiguously ordered Mr. MILLS to be released from custody.

52. Specifically, the colloquy between the court and the prosecutor, and Justice Ross' order of release, went as follows:

> COURT OFFICER: Prison matter, Calendar No. 93, Timothy Mills. The defendant is not produced.
> MR. MORENO: Your Honor, the defendant should have been released on Friday, the defendant's original 180.80 date. The People consent to the defendant's release because after investigating the case for several days and indicting Mr. Mills's (*sic*) co-defendant, the evidence did not allow us to proceed to the grand jury by 180.80. However, defense counsel will be waiving one month of 30.30 time and the investigation as to the defendant's case will continue –
> THE COURT: Okay.
> MR. MORENO: -- wherein
> THE COURT: Where is defense counsel? All right. I just want to hear from defense counsel on the waiver.
> MR. MORENO: -- and as to the continuing record, Your Honor, the order of protection is also still in effect and the defendant has been cautioned about that. The defendant should be released

> immediately as we did consent to his release on February -- I mean, excuse me. Friday, September 2nd (*sic*).
> THE COURT: So are the People saying that there was never a 180.80 waiver from the defense on this matter?
> MR. MORENO: Yes, Your Honor.
> THE COURT: And, thus, the defendant should have been released on Friday; is that correct?
> MR. MORENO: Yes.
> THE COURT: The defendant is released on the People's consent. And this matter is adjourned to October 9th, 2012 for grand jury action. A cut slip to issue. Thank you. Let's notify everyone with a letter regarding this adjournment.

53. However, despite Justice Ross' unambiguous release order and the fact that a "cut slip" was issued to DOC employees within 100 Centre Street and thereafter faxed to Rikers Island on the same day, DOC employees did not release Mr. MILLS from custody until late in the night of September 12 or the early morning of September 13.

54. Indeed, beginning with the conclusion of Mr. MILLS' court appearance on September 7, 2012 – the appearance at which he believed he was to be released on his own recognizance – Mr. MILLS complained to the DOC defendants that he should have already been released. Upon his return to Rikers Island on September 7, Mr. MILLS continuously complained to the DOC defendants that he should have already been released from custody. Mr. MILLS continued making these complaints to the DOC defendants on September 10, September 11 and September 12. However, despite having a duty to ensure they released Mr. MILLS consistent with Justice Ross' order of release on September 10, and despite being informed that such a release order was in effect, the DOC obviously defendants did not take adequate action to ensure Mr. MILLS was released and continued to unreasonably detain him.

55. As a result of the DOC defendants' acts and omissions, Mr. MILLS was not released from custody until late in the evening of September 12 or early in the morning of September 13, 2012.

*Facts and Circumstances of the Dismissal of Mr. MILLS' Charges*

56. Mr. MILLS returned to the criminal court, as ordered, on the following dates: October 9, 2012; December 6, 2012; and February 15, 2013.

57. Upon information and belief, after the October 9, 2012 court appearance, Mr. MILLS voluntarily provided a DNA sample to the prosecutors.

58. After neither Mr. MILLS' DNA nor his fingerprints were matched to those found on the firearm at issue, the prosecution moved to dismiss the charges against Mr. MILLS.

59. Accordingly, on February 15, 2013, the criminal court dismissed the charges against Mr. MILLS, in their entirety.

60. As a result of the defendants' conduct, Mr. MILLS lost housing and job opportunities, incurred medical injuries related to the interruption of his treatments for diabetes, and suffered substantial emotional injuries related to his unlawful detention and prosecution.

**FIRST CLAIM
DEPRIVATION OF RIGHTS
UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983**
(*Against the NYPD Defendants and DOC Defendants*)

61. Mr. MILLS incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

62. By arresting Mr. MILLS without probable cause to do so, by initiating a prosecution against Mr. MILLS for which there was no probable cause to believe the prosecution would succeed, by continuing to unreasonably detain Mr. MILLS for days after receiving a judicial order of release and knowing its contents and requirements, and by the other acts and omissions described in detail in the above Statement of Facts, the NYPD defendants and DOC defendants, under color of state law, deprived Mr. MILLS of his rights, privileges and

immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution, including but not limited to deprivation of the following constitutional rights:

a) freedom from unreasonable seizure of his person (against the NYPD defendants related to Mr. MILLS' detention from the time of his arrest until he was charged with gun possession, and against the DOC defendants related to Mr. MILLS' detention from the time they received Justice Ross' order of release until the time they finally released Mr. MILLS from custody);

b) freedom from arrest without probable cause (against the NYPD defendants only),

c) freedom from false imprisonment (against the NYPD defendants related to Mr. MILLS' detention from the time of his arrest until he was charged with gun possession, and against the DOC defendants related to Mr. MILLS' detention from the time they received Justice Ross' order of release until the time they finally released Mr. MILLS from custody),

d) freedom from the lodging of false charges against him by police officers (against the NYPD defendants only),

e) freedom from malicious prosecution by police (against the NYPD defendants only), and

f) freedom from prosecution based upon knowingly false information (against the NYPD defendants only).

63. The NYPD defendants' and DOC defendants' individual and collective deprivations of Mr. MILLS' constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## NEGLIGENCE
## UNDER THE LAWS OF THE STATE OF NEW YORK
(*Against DOC Officers RICHARD ROE 1 through RICHARD ROE 5 and THE CITY OF NEW YORK*)

64. Mr. MILLS incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

65. The DOC defendants, individually and collectively, owed Mr. MILLS a duty to ensure they had a legal basis to deprive him of his liberty.

66. The DOC defendants were aware of facts that should have led them to believe that they lacked a legal basis to detain Mr. MILLS from September 10, 2012 (the date of Justice Ross' release order) through the time of Mr. MILLS' release in the late evening of September 12 or early morning of September 13, 2012.

67. The DOC defendants breached their duty to Mr. MILLS and thereby caused Mr. MILLS to be illegally incarcerated from September 10, 2012 until his release days later.

68. In so doing, the DOC defendants, jointly and severally, negligently caused injuries, emotional distress and damage to Mr. MILLS, as set forth above.

69. The acts and conduct of the DOC defendants were the direct and proximate cause of injury and damage to Mr. MILLS and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

70. The conduct of the DOC defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of the CITY, clothed with and/or invoking state power and/or authority, and, as a result, the CITY is liable to Mr. MILLS pursuant to the state common law doctrine of *respondeat superior*.

71. As a result of the foregoing, Mr. MILLS was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured as set forth above.

## **JURY DEMAND**

72. Mr. MILLS demands a trial by jury in this action on each and every one of his damage claims.

*WHEREFORE*, Mr. MILLS demands judgment against the defendants individually and jointly and prays for relief as follows:

   a. That he be compensated for violation of his constitutional and common law rights, pain, suffering, mental anguish, humiliation, and other damages as set forth above; and

   b. That he be awarded punitive damages against the NYPD defendants and DOC defendants; and

   c. That he be compensated for attorneys' fees and the costs and disbursements of this action; and

   d. For such other further and different relief as to the Court may seem just and proper.

Dated:   New York, New York
         July 8, 2014

                                    Respectfully submitted,

                                    /s/
                              By:   _____
                                    Robert M. Quackenbush
                                    Rankin & Taylor, PLLC
                                    *Attorneys for the Plaintiff*
                                    11 Park Place, Suite 914
                                    New York, New York 10007
                                    t: 212-226-4507
                                    f: 212-658-9480
                                    e: robert@drmtlaw.com